1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIA ELLEN BUNNEY, | 1:06-CV-00415 OWW NEW (DLB) HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| RON KENAN, | ORDER DENYING PETITIONER'S MOTION TO EXPAND THE RECORD [Doc. #13] |
| Respondent. | |
| _____/ | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented in this action by Michael Satris, Esq.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Marin, following her conviction by court trial on April 5, 1982, of first degree murder in violation of Cal. Penal Code § 187. See Exhibit A, Respondent's Answer to Petition (hereinafter "Answer").  On May 25, 1982, Petitioner was sentenced to serve an indeterminate term of 25 years to life in state prison. Id.

On March 3, 2004, and July 28, 2005, parole suitability hearings were held before the California Board of Prison Terms (now the Board of Parole Hearings - "BPH"). See Exhibits B and C, Answer. Petitioner attended both hearings and was represented by her attorney, Michael Satris. Id. At the conclusion of the 2004 hearing, the BPH denied parole and deferred rehearing for one year. Id. Following the 2005 hearing, the BPH denied parole and deferred rehearing for

1   two years. Id.

2       On November 17, 2004, Petitioner filed a petition for writ of habeas corpus in the Marin

3   County Superior Court challenging the BPH's decision. See Exhibit D, Answer. In a reasoned

4   decision, on February 22, 2005, the petition was denied. Id.

5       Petitioner next filed petitions for writ of habeas corpus in the California Court of

6   Appeals, Fifth Appellate District. See Exhibit E, Answer. On May 26, 2005, and February 16,

7   2006, the petitions were summarily denied. Id.

8       Petitioner proceeded to file petitions for writ of habeas corpus in the California Supreme

9   Court. See Exhibit F, Answer. Those petitions were summarily denied on August 17, 2005, and

10  May 10, 2006. Id.

11      On January 9, 2006, Petitioner filed the instant petition for writ of habeas corpus in the

12  United States District Court for the Northern District of California. The matter was transferred to

13  the Fresno Division on February 27, 2006. The petition for writ of habeas corpus challenges the

14  2004 and 2005 decisions of the BPH denying parole. Petitioner contends the decision was

15  arbitrary, capricious and fundamentally unfair in violation of her due process rights. She further

16  contends the State's decision to deny her parole imposes cruel and unusual punishment upon her

17  in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

18      On October 31, 2006, Respondent filed an answer to the petition. Petitioner filed a

19  traverse to Respondent's answer on November 30, 2006.

20      On December 1, 2006, Petitioner filed a motion for an order directing Respondent to file

21  all exhibits Petitioner had filed with her state habeas petitions.

22                                   **DISCUSSION**

23  I.      Standard of Review

24      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

25  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

26  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

27  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

28  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

1   521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

2   The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

3   provisions.

4       Petitioner is in custody of the California Department of Corrections pursuant to a state

5   court judgment. Even though Petitioner is not challenging the underlying state court conviction,

6   28 U.S.C. § 2254 remains the exclusive vehicle for her habeas petition because she meets the

7   threshold requirement of being in custody pursuant to a state court judgment. Sass v. California

8   Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370

9   F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a

10  state prisoner in custody pursuant to a state court judgment, even when the petition is not

11  challenging [her] underlying state court conviction.'").

12      The instant petition is reviewed under the provisions of the Antiterrorism and Effective

13  Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade,  538 U.S. 63,

14  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

15  adjudication of the claim "resulted in a decision that was contrary to, or involved an

16  unreasonable application of, clearly established Federal law, as determined by the Supreme Court

17  of the United States" or "resulted in a decision that was based on an unreasonable determination

18  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

19  § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

20      As a threshold matter, this Court must "first decide what constitutes 'clearly established

21  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

22  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

23  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

24  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

25  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

26  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

27      Finally, this Court must consider whether the state court's decision was "contrary to, or

28  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

1   72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

2   grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

3   Court on a question of law or if the state court decides a case differently than [the] Court has on a

4   set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S.

5   at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

6   state court identifies the correct governing legal principle from [the] Court's decisions but

7   unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at

8   413.

9   "[A] federal court may not issue the writ simply because the court concludes in its

10  independent judgment that the relevant state court decision applied clearly established federal

11  law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id</u>. at 411.

12  A federal habeas court making the "unreasonable application" inquiry should ask whether the

13  state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at

14  409.

15  Petitioner has the burden of establishing that the decision of the state court is contrary to

16  or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v.</u>

17  <u>Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

18  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

19  state court decision is objectively unreasonable.  <u>See</u> <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th

20  Cir.2003); <u>Duhaime v. Ducharme</u>*, 200 F.3d 597, 600-01 (9th Cir.1999).

21  AEDPA requires that we give considerable deference to state court decisions. The state

22  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

23  interpretation of its own laws. <u>Souch v. Schaivo</u>*, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,

24  537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

25  II.      <u>Review of Claims</u>

26  A parole release determination is not subject to all the due process protections of an

27  adversary proceeding. <u>Pedro v. Oregon Parole Board</u>, 825 F.2d 1396, 1398-99 (9th Cir. 1987); <u>see</u>

28  <u>also</u> <u>Greenholtz</u>, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural

4

protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability, Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.'  472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence.  Id.  Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board.  Id., *citing* Superintendent v. Hill, at 455-56.  Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term."  Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

With regard to the procedural protections outlined in Greenholtz, as Respondent submits and Petitioner concedes, Petitioner was provided all that is required.  Petitioner was provided with advance notice of the hearing, representation by counsel at the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard during the hearing, and a written decision explaining the reasons that parole was denied.  See Exhibits B and C, Answer.

Petitioner, however, contends the BPH's decision was arbitrary, capricious and fundamentally unfair. Nevertheless, a review of Petitioner's parole hearings reveal the state court decisions denying parole were not unreasonable because the BPH's decisions are supported by "some evidence."

In denying parole in 2004 and 2005, the BPH considered and found several factors indicating unsuitability. In both hearings, the BPH relied heavily on the facts of the commitment offense. Pursuant to 15 Cal.Code Regs. § 2402(c)(1)(D)[1], the Board found the first degree murder was carried out in an exceptionally cruel and callous manner. A review of the record shows this finding is supported by at least "some evidence." Petitioner, facing the break-up of a relationship with her boyfriend, purchased a shotgun. See Exhibit C at 87, Answer. She chose to purchase a shotgun instead of a handgun so she would not have to wait. Id. The next day, Petitioner's boyfriend visited Petitioner's home to pick up his fishing gear. Id. at 6. Petitioner then engaged him in a conversation about their relationship. Id. at 87-88. When he turned to pick up his things, Petitioner shot him in the back. Id. at 88. Petitioner then remained in the house the rest of the day. In the evening, the victim's father called in an attempt to locate him. Id. at 5. Even though the victim lay dead or dying nearby, Petitioner calmly denied knowing his whereabouts. She remained at the house until the next day when the police arrived in response to the victim's mother's telephone call. The police were told the victim was in the house and Petitioner had shot and killed him. Id. at 7. Petitioner then kept herself barricaded in the house and kept the police at bay while she wrote approximately twenty letters to friends and family. Id. at 88. Eventually, the police were able to seize Petitioner and take her into custody. In light of these facts, there is

---

[1] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

"some evidence" supporting the BPH's finding that the murder was carried out in a manner which demonstrates exceptionally callous disregard for human suffering. 15 Cal. Code Regs. § 2402(c)(1)(D); Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir.2003).

With respect to the commitment offense, the BPH also found the motive for the killing was "most trivial." See Exhibit C at 87. Petitioner and the victim had dated for approximately 18 months when the victim ended the relationship. Id. at 5. Approximately one month after the relationship ended, Petitioner discovered the victim had begun dating someone else. Id. Despite the fact that Petitioner and the victim were not in a relationship, Petitioner reacted by killing the victim as discussed above. Certainly, the Board's finding that the motive was trivial is supported by the evidence. 15 Cal. Code Regs. § 2402(c)(1)(E).

The BPH also noted Petitioner had a history of unstable and tumultuous relationships. This also is an enumerated circumstance demonstrating unsuitability. 15 Cal. Code Regs. § 2402(c)(3). This finding is supported by evidence of "unsatisfactory romantic relationships, involving two broken marriages and involving, apparently, another extended live-in relationship that was not successful, a self-described period of sexual promiscuity, which was indicative of an inability to form more lasting relationships, all of which is described by [Petitioner]." See Exhibit C at p. 88.

Pursuant to 15 Cal. Code Regs. § 2402(c)(5), the Board also considered psychological factors in finding Petitioner unsuitable for parole. The Board found significant the psychiatric report of March 8, 2002, authored by Dr. Walker, which was quoted by the Board as follows:

> The index offense presents as a crime of affect-laden violence and was committed after the breakup of an intimate relationship with the victim. The inmate reportedly had a history of emotional and dramatic behavior along with extreme sensitivity and a desire to please important others, (in exchange for others being appropriately responsive to her needs) since her adolescence. The inmate, at least since 1996, has supported her behavior, (without personally condoning it), via reliance of her reported history of being a victim of physical, emotional, and sexual abuse. There is no prior indication in the probation officer's report suggesting physical or sexual abuse of the inmate. *Pre-sentencing psychiatric evaluations have uniformally [sic] opined that the inmate has prominent features of a borderline personality disorder. There is a strong indication that the inmate could readily, when she felt emotionally wounded, disconnect herself from the outside influence and focus only on her own feelings of hurt and related rage.* She has evidenced a pattern of compartmentalizing her emotional focus and obfuscating much of her affect of reality via her tendency to intellectualize. As a result she appears incongruent in the relationship in her words and her affect. Her life was an impressionistic view of the

1    world, never seeing it clearly or feeling a part of it, but only having a vague sense of what
it was suppose to be like. Of some concern is that the inmate's version of the offense,

2    particularly in regard to detail, behaviors, thoughts and feelings, has changed little, if at
all, since she gave a statement to the police in 1981. Her self-description as essentially a

3    helpless, thoughtless, numbed, emotionally wrecked shell of a person in inconsistent with
her apparently plan-full behaviors in days leading up to the murder and in her controlled

4    demeanor and organized skills afterwards. Additionally, as she was allegedly in
individual therapy at the time leading up to the murder, there was certainly a viable

5    avenue for support and discussion towards positive conflict resolution. Moreover, after
years of therapy and interpersonal efforts at introspection, one might expect fewer "I

6    don't knows" and "I don't remembers," than Ms. Bunney offered in the current
evaluation. Her stance of being a, "battered woman," as a primary contributing factor

7    does not co-opt her ability or her mandate to explore some of her manipulative
personality dynamics that were blatantly evident at the time of the crime. She appears

8    reluctant to take a full measure of responsibility for the murder (e.g., in other words, he
was shot in the back), despite her verbalization to the contrary. Surprisingly, she also

9    continues to speak of the victim as being cruel and sadistic, which at this stage of her
incarceration and at her age suggests on-going but sublimated personality factors that still

10    effect her perception.

11   <u>See</u> Exhibit C at pp. 89-93 (emphasis added).

12      The BPH found this report to be "disturbing evidence." The Board concluded that these

13   psychological and emotional issues demonstrate that Petitioner continues to be an unreasonable

14   risk to society. <u>Id</u>. at 96. Petitioner argues that the above reservations expressed by the reviewing

15   psychiatrist have since been accounted for in subsequent findings; however, the BPH expressly

16   found Petitioner's assertions on this point were not correct. <u>Id</u>. at 99-100. Notwithstanding other

17   psychological evidence referred to by Petitioner, the psychiatrist's findings are some evidence

18   supporting the Board's finding of unsuitability.

19      The BPH also considered Petitioner's post-commitment behavior per § 2402(c)(6). The

20   Board noted that Petitioner had not received a "chrono" for serious misconduct since 1992.

21   However, the Board discussed a recent pattern of negative behavior in prison. The negative

22   behavior included instances of disrespect towards staff and rude and disrespectful behavior to

23   other inmates in the room which resulted in a room change. While these instance cannot be

24   considered individually to be "serious misconduct" per § 2406(c)(6), they can be considered as

25   demonstrating a pattern of negative behavior providing evidence of unsuitability. <u>See</u> 15 Cal.

26   Code Regs. § 2402(b) (Circumstances which taken alone may not firmly establish unsuitability

27   for parole may contribute to a pattern which results in a finding of unsuitability.); <u>see also</u> <u>Biggs</u>,

28   334 F.3d at 916 ("The Parole Board's decision is one of 'equity' and requires a careful balancing

1 | and assessment of the factors considered.). This is precisely what the BPH determined. The BPH

2 | noted that Petitioner responded to these instances of negative behavior by blaming them on the

3 | other individuals involved. See Exhibit C at p. 89. The Board determined this was "further

4 | indication of a pattern of blaming [Petitioner's] criminal activity on external events, and is an

5 | indication to the Panel that [Petitioner] does not fully appreciate the wrongfulness of [her]

6 | conduct." Id. This conclusion is supported by the evidence.

7 |        The Board also inquired into the circumstances supporting a finding of suitability for

8 | parole. See 15 Cal. Code Regs. § 2402(d). Petitioner did not have a criminal history, her age

9 | reduced the probability of recidivism, and her parole plans appeared viable. In addition,

10 | Petitioner had programmed exceptionally well institutionally. On the other hand, the Board found

11 | Petitioner did not have a stable social history. In addition, the Board determined the crime was

12 | not the result of significant stress or Battered Women Syndrome. Further, the Board determined

13 | Petitioner's signs of remorse were questionable in light of the 2002 psychiatrist's report. Last,

14 | although Petitioner had programmed very well, the Board found her recent negative behavior was

15 | not insignificant.

16 |        The Ninth Circuit has held that serious questions involving a prisoner's liberty interest in

17 | parole would be raised if the Board continued to rely solely on the gravity of the offense and

18 | conduct prior to imprisonment to justify denial of parole, despite a prisoner's continuing

19 | demonstration of exemplary behavior and evidence of rehabilitation. Biggs, 334 F.3d at 916.

20 | Petitioner argues the Board continues to rely on the unchanging circumstances of the underlying

21 | offense. As discussed above, however, the circumstances of the offense, while significant, were

22 | not the only reasons for the Board's decision. Pursuant to 15 Cal. Code Regs. § 2402, the Board

23 | must consider "[a]ll relevant, reliable information available to the panel." In making its

24 | determination, the Board "shall include the circumstances of the prisoner's social history; past

25 | and present mental state; past criminal history, including involvement in other criminal

26 | misconduct which is reliably documented; the base and other commitment offenses, including

27 | behavior before, during and after the crime; past and present attitude toward the crime; any

28 | conditions of treatment or control, including the use of special conditions under which the

1    prisoner may safely be released to the community; and any other information which bears on the

2    prisoner's suitability for release." Id. It is apparent the Board did so in this case and carefully

3    balanced and assessed the various factors. Those findings were supported by at least "some

4    evidence."

5        Petitioner also alleges she has been denied parole because of an arbitrarily established

6    policy of indefinitely withholding the establishment of a parole date. This claim should also be

7    rejected.  As more fully discussed above, "[i]n the parole context, the requirements of due

8    process are met if 'some evidence' supports the decision." Biggs, 334 F.3d at 914. If there is not

9    some evidence to support a decision denying parole, due process is violated. Therefore, even

10   though California law states that the BPT shall normally set parole release dates, due process

11   does not require the parole board to set a parole date where some evidence exists demonstrating

12   that Petitioner should not be paroled. Here, there was some evidence supporting the Board's

13   decision.

14       Petitioner further contends the Board's determination of unsuitability amounts to cruel

15   and unusual punishment under the Eighth Amendment. This claim is also without merit. A

16   criminal sentence that is not proportionate to the crime for which a defendant is convicted may

17   violate the Eighth Amendment. However, no inference of gross disproportionality can be drawn

18   in this case. Petitioner was convicted of first degree murder. Her sentence of 25 years to life is

19   not grossly disproportionate to her crime. In addition, the parole board's action of repeatedly

20   denying Petitioner parole does not violate the Eighth Amendment. See United States v.

21   O'Driscoll, 761 F.2d 589, 599 (10th Cir.1985) ("A sentence of imprisonment for a very long term

22   of years, the effect of which is to deny a prisoner eligibility for parole until a time beyond his life

23   expectancy, does not violate the Eighth Amendment prohibition of imposition of cruel and

24   unusual punishment.").

25        In light of the above, it cannot be said that the state court resolution of Petitioner's claims

26   "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

27   established Federal law, as determined by the Supreme Court of the United States" or "resulted

28   in a decision that was based on an unreasonable determination of the facts in light of the evidence

1 presented in the State Court proceeding." 28 U.S.C. § 2254(d).

2 **RECOMMENDATION**

3      Based on the foregoing, it is HEREBY RECOMMENDED that:

4     1.     The petition for writ of habeas corpus be DENIED; and

5     2.     Judgment be entered in favor of Respondent.

6      This Findings and Recommendations is submitted to the assigned United States District

7 Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

8 the Local Rules of Practice for the United States District Court, Eastern District of California.

9 Within thirty (30) days after being served with a copy, any party may file written objections with

10 the court and serve a copy on all parties.  Such a document should be captioned "Objections to

11 Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

12 and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

13 objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

14 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

15 may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

16 Cir. 1991).

17 **ORDER**

18      Petitioner has requested expansion of the record to include certain exhibits that were

19 attached to her state court pleadings. However, these exhibits are not necessary to render a

20 decision in this matter. Accordingly, Petitioner's request is DENIED.

22     IT IS SO ORDERED.

23    **Dated:**   __April 11, 2007__        __/s/ **Dennis L. Beck**__

24                                    UNITED STATES MAGISTRATE JUDGE